**STINSON LLP**
Richard J.L. Lomuscio (Bar No. 038461999)
140 Broadway, Suite 2330
New York, New York 10005
Telephone:      (646) 883-7471
Facsimile:      (646) 883-7477
richard.lomuscio@stinson.com

Matthew D. Moderson (*pro hac vice*)
1201 Walnut St., Suite 2900
Kansas City, Missouri 64106
Telephone:      (816) 691-2736
Facsimile:      (816) 412-8123
matthew.moderson@stinson.com

*Attorneys for Defendant i360, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2*, a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:24-cv-04345 |
| v. | ) ) | |
| i360, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ANSWER OF DEFENDANT i360, LLC

Defendant i360, LLC ("Defendant") hereby answers the allegations in the Complaint

[ECF. No. 1-1, pp. 31-54] filed by Plaintiff Atlas Data Privacy Corporation ("Atlas"), together

with individual Plaintiffs Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan,

Peter Andreyev, William Sullivan, Jane Doe-1, and Jane Doe-2 (collectively, the "Individual Plaintiffs" and, together with Atlas, the "Plaintiffs") in the Superior Court of New Jersey, Mercer County, captioned, *Atlas Data Privacy Corporation, et al. v. i360, LLC, et al.* (Case No. MER-L-000297-24).  Defendant removed this action to this Court by notice of removal on March 28, 2024 [ECF No. 1].

## AS TO "INTRODUCTION"

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

**ANSWER: The first sentence of paragraph 1 is a characterization about "these tumultuous times" and does not require a response; to the extent a response is required, Defendant denies the allegations set forth in the first sentence of paragraph 1.  The remainder of paragraph 1 is a characterization regarding the purported policy of Daniel's Law and does not require a response; to the extent a response is required, Defendant denies the allegations in the remainder of paragraph 1.**

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

**ANSWER: The first sentence of paragraph 2 is a purported characterization of this action to which no response is required; to the extent a response is required,**

2

**Defendant denies the allegations in the first sentence of paragraph 2. The remainder of paragraph 2 is a characterization about unspecified "[c]ompanies" and does not require a response; to the extent a response is required, Defendant denies the remaining allegations in paragraph 2.**

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of paragraph 3 and, therefore, denies the allegations in the first sentence. The second sentence of paragraph 3 is a general colloquy about "data brokers," to which no response is required; to the extent a response is required, Defendant denies the allegations in the second sentence of paragraph 3. The third sentence of paragraph 3 is a statement of policy regarding public officials and does not require a response; to the extent a response is required, Defendant denies the allegations in the third sentence of paragraph 3.**

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiff seeks all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

**ANSWER: Paragraph 4 states legal conclusions and/or purported characterizations of this action to which no response is required; to the extent a response is required, Defendant denies all allegations in paragraph 4.**

## AS TO "BACKGROUND"

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

> **ANSWER: Defendant admits that, to the best of its information and belief, Daniel Anderl was tragically shot and killed at his home in July 2020 and was age 20 at that time. Defendant also admits that Daniel Anderl's father was critically wounded during the same attack. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 5 and, therefore, denies the remaining allegations in paragraph 5.**

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

> **ANSWER: Defendant admits that Daniel Anderl was murdered at his home and that his father was violently attacked. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 6 and, therefore, denies the remaining allegations of paragraph 6.**

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet, the same kind of data broker services at issue in this case.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 7 and, therefore, denies the allegations of paragraph 7.**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1 A-1, <u>et</u> <u>seq.</u> and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

**ANSWER: The allegations in paragraph 8 concerning N.J.S.A. 47:A-1, *et seq.* and N.J.S.A. 56:8-166.1 ("<u>Daniel's Law</u>") state legal conclusions to which no response is required.  Defendant also lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 8. Therefore, Defendant denies the allegations in paragraph 8.**

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**ANSWER: The allegations in paragraph 9 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations of paragraph 9.**

10.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."

> **ANSWER: Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10 and, therefore, denies the allegations in paragraph 10.  In further response, Defendant refers to Justice Roberts's statements for the true contents thereof.**

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

> **ANSWER: The allegations in paragraph 11 concerning "[t]he federal bill" state legal conclusions to which no response is required, and Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations. To the extent a response is required, Defendant denies the allegations in paragraph 11.**

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached, and it was signed by President Biden.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12 and, therefore, denies the allegations in paragraph 12.**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 13 and, therefore, denies the allegations in paragraph 13.**

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling. The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 14 and, therefore, denies the allegations in paragraph 14.**

## AS TO "THE PARTIES"

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-l's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-l's movements to and from her home, immediately prior to the task force initiating arrests.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 15 and, therefore, denies the allegations of paragraph 15.**

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 and, therefore, denies the allegations in paragraph 16.**

17.    Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not

believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 17 and, therefore, denies the allegations in paragraph 17.**

18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18 and, therefore, denies the allegations in paragraph 18.**

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 19 and, therefore, denies the allegations of paragraph 19.**

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 20 and, therefore, denies the allegations of paragraph 20.**

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.

Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 21 and, therefore, denies the allegations of paragraph 21.**

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 22 and, therefore, denies the allegations of paragraph 22.**

23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm whose protected information has been discovered and has responded to

11

specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 23 and, therefore, denies the allegations of paragraph 23.**

24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 24 and, therefore, denies the allegations of paragraph 24.**

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

> **ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 25 and, therefore, denies the allegations of paragraph 25.**

26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,627 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

**ANSWER: Defendant denies the allegations in paragraph 26.**

27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

**ANSWER: Defendant denies the allegations in paragraph 27 to the extent they constitute legal conclusions concerning any individual's legal status as a "covered person" under Daniel's Law. Defendant otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 27 and, therefore, denies the allegations of paragraph 27.**

28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

**ANSWER: The allegations in paragraph 28 are vague and ambiguous, and Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 28 and, therefore, denies the allegations of paragraph 28.**

29.    Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

**ANSWER:  Defendant denies all allegations in paragraph 29.**

30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

**ANSWER: The allegations in paragraph 30 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 30.**

31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 31 and, therefore, denies the allegations in paragraph 31.**

32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a Covered Person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

[SCREEN CAPTURE INTENTIONALLY OMITTED]

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 32 and, therefore, denies the allegations of paragraph 32.**

33.    AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

[SCREEN CAPTURE INTENTIONALLY OMITTED]

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 33 and, therefore, denies the allegations of paragraph 33.**

34.    Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later stage (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

[SCREEN CAPTURE INTENTIONALLY OMITTED]

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 34 and, therefore, denies the allegations of paragraph 34.**

35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

[SCREEN CAPTURE INTENTIONALLY OMITTED]

[ADDITIONAL SCREEN CAPTURE INTENTIONALLY OMITTED]

15

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 35 and, therefore, denies the allegations of paragraph 35.**

36.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**ANSWER: The allegations of paragraph 36 contain legal conclusions and purported characterizations of this action to which no response is required. In addition, Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 36 and, therefore, denies the allegations of paragraph 36.**

37.     Defendant i360, LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**ANSWER: Defendant denies the allegations in paragraph 37.**

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

**ANSWER: The allegations in paragraph 38 are vague and ambiguous, and Defendant, therefore, denies the allegations in paragraph 38.**

39.    Defendants offer and engage in the disclosure of data and information through one or more websites, applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. Those websites include:

i-360.com

**ANSWER: The allegations in paragraph 39 are vague and ambiguous.  Defendant admits that it owns and operates the website i-360.com. All remaining allegations in paragraph 39 are denied.**

40.    In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

**ANSWER: Defendant denies Plaintiffs' characterization of its website, business, and practices.  The allegations in paragraph 40 state legal conclusions to which no response is required; to the extent a response is required, Defendant denies the allegations of paragraph 40.**

41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

**ANSWER: Defendant denies Plaintiffs' characterization of its website, business, and practices. The allegations of paragraph 41 are vague and ambiguous and, therefore, Defendant denies the allegations of paragraph 41.**

## AS TO "JURISDICTION AND VENUE"

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

**ANSWER: Defendant denies that it committed any "unlawful actions." Defendant states that it does not contest the jurisdiction of the United States District Court for the District of New Jersey to hear this action. Defendant denies all remaining allegations of paragraph 42.**

43.     Venue is proper pursuant to R. 4:3-2, in that Mercer County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

**ANSWER: Paragraph 43 states legal conclusions to which no response is required. To the extent any response is necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 43 and, therefore, denies the allegations of paragraph 43. Defendant does not contest venue in the United States District Court for the District of New Jersey.**

### AS TO "FACTS COMMON TO ALL COUNTS"

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 ((P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

**ANSWER: Paragraph 44 states a legal conclusion to which no response is required; to the extent a response is required, Defendant admits the allegations in paragraph 44.**

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

**ANSWER: Paragraph 45 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 45. In further response, Defendant refers to the text of Daniel's Law for the true contents thereof.**

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

**ANSWER: Paragraph 46 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 46.**

18

**In further response, Defendant refers to the text of Daniel's Law for the true contents thereof.**

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

**ANSWER: Paragraph 47 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the allegations in paragraph 47. In further response, Defendant refers to the text of Daniel's Law for the true contents thereof.**

48.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 48 and, therefore, denies the allegations of paragraph 48.**

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 49 and, therefore, denies the allegations of paragraph 49.  In further response, Defendant refers to the text of Daniel's Law for the true contents thereof.**

50.     As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

... "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

**ANSWER: Paragraph 50 states a legal conclusion to which no response is required; to the extent a response is required, Defendant denies the same. In further response, Defendant refers to the text of Daniel's Law for the true contents thereof.**

51.    Starting on or about January 10, 2024 each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

**ANSWER: The allegations in paragraph 51 contain a legal conclusion to which no response is required. Further, Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 51 and, therefore, denies the allegations of paragraph 51.**

52.    For example, a true and correct copy of the email directly from Plaintiff Andreyev with personal information redacted) is pasted here:

[SCREEN CAPTURE INTENTIONALLY OMITTED]

**ANSWER: Defendant refers the Court to the communication in question for an accurate and complete statement of the contents thereof. Defendant denies the allegations in paragraph 52.**

53.    Defendants failed to respond to these notices and, upon information and belief, cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

**ANSWER: Defendant denies the allegations in paragraph 53.**

54.    All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 54 and, therefore, denies the allegations of paragraph 54.**

55.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**ANSWER: Defendant denies that it has violated Daniel's Law, and Defendant further denies all remaining allegations of paragraph 55.**

### <u>AS TO "COUNT ONE"</u>

56.    The allegations of the Complaint set forth above are included herein as if set forth at length.

**ANSWER: In response to Plaintiffs' purported incorporation by reference in paragraph 56 of paragraphs 1 through 55 of the Complaint, Defendant restates its responses to paragraphs 1 through 55 of the Complaint as though set forth fully herein.**

57.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished

home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

> **ANSWER: The allegations in paragraph 57 are vague and ambiguous, and Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 57 and, therefore, denies the allegations of paragraph 57.**

58.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

> **ANSWER: Defendant denies the allegations contained in paragraph 58.**

59.    As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law. Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

> **ANSWER: Defendant denies the allegations contained in paragraph 59.**

60.    Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

> **ANSWER: Defendant denies the allegations contained in paragraph 60.**

61.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

> **ANSWER: Defendant denies the allegations contained in paragraph 61.**

## AS TO HEADINGS AND SUBHEADINGS

Defendant is not required to respond to headings or subheadings within the Complaint. To the extent that a response is required, Defendant denies any and all averments in the headings or subheadings of the Complaint.

## AS TO REQUESTS FOR RELIEF

Defendant is not required to respond to Plaintiffs' requests for relief set forth in the unnumbered "WHEREFORE" paragraph and its various subparagraphs on pages 21-22 of the Complaint. To the extent a response is required, Defendant denies all of the same and further denies that Plaintiffs are entitled to any of the relief or demands set forth in the Complaint or to any relief whatsoever.

## AS TO FOOTNOTES

Defendant is not required to respond to Plaintiffs' various footnotes set forth in paragraphs 7, 10, 12, 13, 14, and 50 of the Complaint, each of which contains hyperlinks to internet sites. To the extent a response is required, Defendant refers the Court to the internet sites themselves for true and accurate statements of their contents; in all respects, Defendant denies all allegations related to the footnotes.

## AS TO SCREEN CAPTURES

Defendant is not required to respond to the various screen captures (or "screenshots") Plaintiffs insert below paragraphs 32, 33, 34, 35, and 52 of the Complaint. To the extent a response is required, Defendant refers the Court to the originals of the various screen-captured documents and communications (the "Originals") for true and accurate statements of their contents and denies all allegations related to such screen captures.

## GENERAL DENIAL

Defendant denies each and every allegation set forth in Plaintiffs' Complaint, except to the extent expressly admitted herein.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof or persuasion that otherwise is placed on Plaintiffs, Defendant asserts the following affirmative defenses to the Complaint. Defendant reserves all rights to amend this Answer to revise the defenses asserted herein and to assert additional defenses. Further, Defendant reserves the right to amend this Answer to assert counterclaims and/or third party claims when and if, in the course of investigation, discovery, or preparation for trial, it may become appropriate to do so.

### FIRST DEFENSE
### (Failure to State Claim)

Plaintiffs' claims are barred completely or in part because they fail to state facts sufficient to constitute a cause of action against Defendant.

### SECOND DEFENSE
### (Good Faith Compliance)

Plaintiffs' claims are barred completely or in part because at all times relevant to this matter, Defendant acted in good faith and complied with all applicable laws, including Daniel's Law.

### THIRD DEFENSE
### (No Willful, Intentional, Knowing, or Negligent Failure to Comply)

Defendant acted reasonably and with due care with respect to the takedown notices and the other matters alleged herein. This also precludes any award of punitive damages since there are no allegations or evidence of willful or reckless disregard of the law as required by N.J.S.A. § 56:8-166.1(c)(2).

### FOURTH DEFENSE
### (Lack of *Mens Rea*)

Defendant cannot be held liable to the extent that it did not possess the requisite intent or mental state required in connection with a claim under Daniel's Law.

## FIFTH DEFENSE
### (Invalid Assignment)

Atlas's claims are barred completely or in part because the purported assignment of covered persons' claims is invalid because, *inter alia*, the assignments are unconscionable, unenforceable, and/or otherwise invalid and, therefore, Atlas is not an appropriate or cognizable "assignee" pursuant to N.J.S.A. § 56:8-166.1(d).

## SIXTH DEFENSE
### (Failure to Mitigate)

Plaintiffs' claims are barred completely or in part, or damages should be reduced, because they failed to reasonably mitigate their alleged damages, if any.

## SEVENTH DEFENSE
### (Estoppel)

Plaintiffs' claims are barred completely or in part under the doctrine of estoppel as a result of Plaintiffs' own actions and inactions.  Plaintiffs are estopped in whole or in part from obtaining the relief that they seek in the Complaint.

## EIGHTH DEFENSE
### (Laches)

Plaintiffs' claims are barred completely or in part by the equitable doctrine of laches to the extent that Plaintiffs seek equitable relief such as temporary, preliminary, and/or permanent injunctive relief because the takedown notices were not sent in a timely manner and were instead intentionally delayed so that they could be sent to Defendant in an unduly burdensome and consolidated manner.

## NINTH DEFENSE
### (Unclean Hands)

Atlas's claims for relief are barred by the doctrine of unclean hands, because Atlas's conduct with respect to this litigation has been inequitable, improper, illegal, and in bad faith.

**TENTH DEFENSE**
**(Standing)**

Plaintiffs' claims are barred completely or in part because one or more of the Plaintiffs lack standing.

**ELEVENTH DEFENSE**
**(Prudential Standing)**

Atlas lacks prudential standing to pursue this action against Defendant because it is not the real party in interest. Although Atlas purports to be the assignee of 19,627 assignor-claimants, those assignments were made outside the ordinary course of business, in bad faith, and not for ordinary business purposes. *Cf. Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 292 (2008).

**TWELFTH DEFENSE**
**(Preemption)**

Daniel's Law is preempted and invalid as applied to Defendant by operation of contrary federal law.

**THIRTEENTH DEFENSE**
**(Unconstitutionality, U.S. Const.)**

Plaintiffs' claims are barred completely or in part because Daniel's Law is facially unconstitutional and unconstitutional as applied to Defendant under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

**FOURTEENTH DEFENSE**
**(Unconstitutionality, N.J. Const.)**

Plaintiffs' claims are barred completely or in part because Daniel's Law is facially unconstitutional and unconstitutional as applied to Defendant under the Constitution of the State of New Jersey.

**FIFTEENTH DEFENSE**
**(Bad Faith)**

Plaintiffs' claims are barred completely or in part because any and all acts, occurrences, and damages alleged or referred to in the Complaint were proximately caused by the bad faith

of one or more Plaintiffs and/or others in that Plaintiffs and/or others failed to deal properly, fairly, honestly, and reasonably with Defendant.

## SIXTEENTH DEFENSE
### (Acts of Others and Intervening Causes)

Plaintiffs' claims are barred completely or in part because Plaintiffs' alleged damages, if any, were the result of acts of third parties and other intervening or superseding events, factors, occurrences or conditions, which were in no way caused by Defendant or any party under Defendant's control, and for which Defendant is not liable.

## SEVENTEENTH DEFENSE
### (Impossibility of Performance)

Plaintiffs' claims are barred completely or in part because performance was impossible, as a result of, among other things, the intentional sending of thousands of takedown notices *en masse* in a manner intended to frustrate compliance.

## EIGHTEENTH DEFENSE
### (No Cognizable Damages)

Plaintiffs' claims are barred completely or in part for failure to show "actual damages" as required by N.J.S.A. § 56:8-166.1(c)(1).

## NINETEENTH DEFENSE
### (No Proximate Cause)

Plaintiffs' claims are barred completely or in part because Defendant was not the proximate or actual cause of the damages alleged by Plaintiffs, if any exist.

## DEFENDANT'S REQUEST FOR RELIEF

**WHEREFORE,** Defendant requests that this Court enter judgment dismissing the Complaint with prejudice and awarding Defendant such other and further relief as the Court deems just and proper.

Dated: October 3, 2025.                Respectfully submitted,

**STINSON LLP**

*/s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio (Bar No. 038461999)
140 Broadway, Suite 2330
New York, New York 10005
Telephone:  646-883-7471
richard.lomuscio@stinson.com

Matthew D. Moderson (*pro hac vice*)
1201 Walnut St., Suite 2900
Kansas City, Missouri 64106
Telephone: 816-691-2736
matthew.moderson@stinson.com

*Attorneys for Defendant i360, LLC*


## CERTIFICATE OF SERVICE

The undersigned hereby states that, on this 3rd day of October, 2025, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, which sent notice of electronic filing to all counsel of record.

*/s/ Richard J.L. Lomuscio*
*Attorney for Defendant i360, LLC*